1  MICHELLE UZETA (State Bar No. 164402)
2  ANNETTE MORASCH (State Bar No. 263797)
   amorasch@hrc-la.org
3  HOUSING RIGHTS CENTER
4  520 S. Virgil Ave., Suite 400
   Los Angeles, CA 90020
5  TEL: (213) 387-8400 ex. 29
6  FAX: (213) 381-8555
7  Attorney for Plaintiffs

FILED
CLERK, U.S. DISTRICT COURT

SEP 1 0 2010

CENTRAL DISTRICT OF CALIFORNIA
BY_____ DEPUTY

8          UNITED STATES DISTRICT COURT,
           CENTRAL DISTRICT OF CALIFORNIA

9

10  ANA BELTRAN, an individual;
    ANTONIO BELTRAN, an
11  individual; STEPHANY GILMORE,
    an individual; SOUTHERN
12  CALIFORNIA HOUSING RIGHTS
    CENTER, d/b/a HOUSING RIGHTS
13  CENTER, a California nonprofit
    corporation,
14
              Plaintiffs,
15
         vs.
16
    RAFORD MANAGEMENT CO.,
17  INC., a California corporation;
    RAFAEL FIGUEROA, individually
18  and as President of Raford
    Management Co., Inc.; ENRIQUE
19  OTAROMA, individually and as
    agent of Raford Management Co.,
20  Inc.; S.M.H. GRANDVIEW, LLC, a
    California limited liability company;
21  ZENG, LLC, a Nevada corporation,
    as owner and managing partner of
22  S.M.H. Grandview, LLC; CULVER
    APTS., LLC, a California limited
23  liability company; PALMS APTS.,
    LLC, a limited liability company;
24  GEORGE MCHOSE, as an
    individual and as manager/partner of
25  Zeng, LLC, Palms Apts., LLC and
    Culver Apts., LLC; AVI
26  SHLANGER, as an individual and as
27

Case No:

**CV 10 - 6757** SVW (PJWx)

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF AND
DAMAGES FOR VIOLATIONS OF:**

1. The Fair Housing Amendments Act
   of 1988, 42 U.S.C. §§ 3601 et seq.;
2. California Fair Employment and
   Housing Act, Cal. Gov't Code §
   12955, et seq.;
3. Unruh Civil Rights Act, Cal. Civil
   Code § 51;
4. Unfair Business Practices Act, Cal.
   Bus. & Prof. Code §17200, et seq;
5. Negligence

**JURY TRIAL DEMANDED**

28

1  a manager/partner of S.M.H. )
2  Grandview, LLC; JEFFREY D. )
   HOLMES, as an individual and as a )
3  manager/partner of Palms Apts., )
   LLC and Culver Apts., LLC, )
4                                  )
5          Defendants             )
                                   )

6

7              **I.      INTRODUCTION**

8      1. This is an action for declaratory and injunctive relief and damages against: Raford

9  Management Co., Inc.; S.M.H. Grandview, LLC; Zeng, LLC; Palms Apts., LLC; Culver

10 Apts., LLC; Rafael Figueroa; George McHose; Avi Shlanger; Jeffrey D. Holmes;

11 Enrique Otaroma; and Does I-X (collectively "Defendants"), for discrimination in the

12 rental of housing based on familial status. Defendants have engaged in a pattern or

13 practice of conduct with the purpose and the effect of discriminating against families

14 with minor-aged children by among other things: imposing and enforcing unreasonably

15 restrictive rules, terms and conditions on the tenancies of families with children; and

16 making written and oral statements of preference disfavoring families with children.

17 This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601, *et*

18 *seq,* and related state laws.

19            **II. JURISDICTION AND VENUE**

20     1.     The jurisdiction of this Court over the subject matter of this action is

21 predicated on 28 U.S.C. § 1331 in that the claims alleged herein arise under the laws of

22 the United States, specifically the federal Fair Housing Act, 42 U.S.C. §§ 3601-3619

23 ("FHA"). The state law claims form the same case and controversy as the federal law

24 claims. Thus, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to

25 hear and determine Plaintiffs' state law claims.

26     2.     All Defendants reside or do business in this district and all events giving rise

27 to this complaint occurred in this district. Thus venue is proper in the Central District of

28 California under 28 U.S.C. § 1391(b)(2).

3.     This Court has authority to grant declaratory and injunctive relief as well as actual and punitive damages pursuant to 42 U.S.C. § 3612(o)(3), and 42 U.S.C. § 3613(c)(1).  The Court also has the authority to award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2).

## III.   PARTIES

1.   At all times mentioned and relevant herein, Plaintiff Ana Beltran ("Ana") was and is a resident of the County of Los Angeles.  From January 1, 2004 until September of 2010, Ana was a tenant of a one-bedroom apartment owned by Defendant S.M.H. Grandview and managed by Defendant Raford Management Co., Inc., located at 4136-4140 Grandview Boulevard, Los Angeles.

2.   At all times mentioned and relevant herein, Plaintiff Antonio Beltran ("Antonio") was and is a resident of the County of Los Angeles.  From the year 2000 up to the present, Antonio has been a tenant of a one-bedroom apartment owned by Defendant S.M.H. Grandview and managed by Defendant Raford Management Co., Inc., located at 4136-4140 Grandview Boulevard, Los Angeles.

3.   At all times mentioned and relevant herein, Plaintiff Stephany Gilmore ("Ms. Gilmore") was and is a resident of the County of Los Angeles.  From March 2009 until the present, Ms. Gilmore has been a tenant of a one-bedroom apartment owned by Defendant S.M.H. Grandview and managed by Defendant Raford Management Co., Inc., located at 4136-4140 Grandview Boulevard, Los Angeles, California.

4.   Plaintiff Southern California Housing Rights Center ("HRC") is a non-profit corporation organized under the laws of the State of California with its principal place of business at 520 S. Virgil Ave., Los Angeles, California.  HRC's mission is to actively support and promote fair housing through education and advocacy in order that all persons have the opportunity to secure the housing they desire and can afford, without being discriminated against based on their race, color, religion, gender, sexual orientation, national origin, familial status, marital status, disability, ancestry, age, source

1  of income or other characteristics protected by law.  HRC engages in activities to identify

2  barriers to fair housing in the County of Los Angeles and Ventura County and to

3  counteract and eliminate discriminatory housing practices.  HRC activities include, but

4  are not limited to: (1) outreach and education to the community regarding fair housing;

5  (2) investigating allegations of discrimination; (3) conducting tests of housing facilities to

6  determine whether freedom of residence and equal opportunity are provided; (4) taking

7  other necessary steps to assure equal opportunity in order to counteract and eliminate

8  discriminatory housing practices.

9       5.  In support of its goals, HRC engages in a variety of educational, counseling and

10  referral services throughout Los Angeles and Ventura Counties, as well as conducting

11  tests for housing discrimination throughout the area.  HRC staff has spoken at various

12  forums sponsored by government agencies and real estate industry groups.  These

13  activities provide guidance and information to individuals throughout HRC's service area

14  who are seeking and providing housing.

15       6.  The public outreach activities in which HRC engages have generated numerous

16  phone calls from individuals who have a variety of needs in seeking access to housing.

17  HRC counsels these individuals on the options available to them to obtain access to

18  integrated housing and/or refers the callers to appropriate government and community

19  agencies for assistance.

20       7.  Upon information and belief, at all times mentioned and relevant herein, Defendant

21  S.M.H Grandview, LLC, a California limited liability company with its primary place of

22  business located in Los Angeles, California, was and is the owner of residential rental

23  apartment complexes located at 4136-4140 Grand View Boulevard, in the County of Los

24  Angeles, ("Grand View Property").

25       8.  Upon information and belief, at all times mentioned and relevant herein, Defendant

26  Palms Apts., LLC ("Palms Apts.") a California limited liability company with its primary

27  place of business located in Los Angeles, California, was and is the owner of a residential

28

rental apartment complex located at 11265 Palms Boulevard, in the County of Los Angeles, ("Palms Property").

9. Upon information and belief, at all times mentioned and relevant herein, Defendant Culver Apts., LLC ("Culver Apts.") a California limited liability company with its primary place of business located in Los Angeles, California, was and is the owner of a residential rental apartment complex located at 12480 Culver Boulevard, in the County of Los Angeles, ("Culver Property").

10. Upon information and belief, at all times mentioned and relevant herein, Defendant, Raford Management Co., Inc., a California corporation with its primary place of business located in Encino, California, ("Raford Management") was and is the management company in charge of the Grand View Property, Palms Property and Culver Property.

11. The Grand View Property, Palms Property and Culver Property (which shall collectively be referred to as "Subject Properties") are dwellings within the meaning of 42 U.S.C. § 3602(b).

12. Upon information and belief, at all times mentioned and relevant herein, Defendant Zeng, LLC ("Zeng"), a Nevada limited liability company doing business in Los Angeles, California, was and is an owner, partner and/or agent of S.M.H. Grandview, LLC. In this capacity, Zeng was and is responsible for approving potential tenants, establishing rules and regulations for in-place tenants, and for terminating the leases of in-place tenants through policies, practices and processes adopted and implemented directly by Zeng and/or Zeng's partners, agents or employees at the Grand View Property.

13. Upon information and belief, at all times mentioned and relevant herein, Defendant George McHose ("McHose") was and is an owner, president, partner and/or agent of Zeng; S.M.H. Grandview, LLC; Palms Apts., and Culver Apts. In these capacities, McHose was and is responsible for approving potential tenants, establishing

1  rules and regulations for in-place tenants, and for terminating the leases of in-place
2  tenants through policies, practices and processes adopted and implemented directly by his
3  companies, partners, agents or employees at the Subject Properties.

4      14.  Upon information and belief, at all times mentioned and relevant herein,
5  Defendant Jeffery D. Holmes ("Holmes") was and is an owner, president, partner and/or
6  agent of Palms Apts. and Culver Apts.  In these capacities, Holmes was and is
7  responsible for approving potential tenants, establishing rules and regulations for in-place
8  tenants, and for terminating the leases of in-place tenants through policies, practices and
9  processes adopted and implemented directly by the partners, agents and/or employees of
10 Palms Apts., and/or Culver Apts. at the Subject Properties.

11     15. Upon information and belief, at all times mentioned and relevant herein,
12 Defendant Avi Shlanger ("Shlanger") was and is an owner, president, partner and/or
13 agent of S.M.H. Grandview, LLC.  In this capacity, Shlanger was and is responsible for
14 approving potential tenants, establishing rules and regulations for in-place tenants, and
15 for terminating the leases of in-place tenants through policies, practices and processes
16 adopted and implemented directly by S.M.H. Grandview, LLC's partners, agents or
17 employees at the Subject Properties.

18

19     16.  Upon information and belief, at all times mentioned and relevant herein,
20 Defendant Rafael Figueroa ("Figueroa") was and is the owner and/or manager of Raford
21 Management.  In this capacity, Figueroa was and is responsible for training onsite-
22 property managers, approving potential tenants, establishing rules and regulations for in-
23 place tenants, and for terminating the leases of in-place tenants through policies, practices
24 and processes adopted and implemented directly by Raford Management's partners,
25 agents or employees at all of the Subject Properties.  Figueroa is an "owner" within the
26 meaning of Cal. Gov't Code §§ 12927(e) and 12955(a) and a "person" subject to the anti-
27 discrimination provisions of 42 U.S.C. § 3602(d).  At all times mentioned and relevant
28 herein, Figueroa was and is a resident of the County of Los Angeles.

17.  Upon information and belief, at all times mentioned and relevant herein, Defendant Enrique Otaroma ("Otaroma") was and is the onsite-property manager of the Grand View Property and is an employee and agent of  Raford Management, as well as S.M.H. Grandview, LLC.  Otaroma is an "owner" within the meaning of Cal. Gov't Code §§ 12927(e) and 12955(a) and a "person" subject to the anti-discrimination provisions of 42 U.S.C. § 3602(d).  At all times mentioned and relevant herein, Otaroma was and is a resident of the County of Los Angeles.

18.  Plaintiffs are informed and believe that each Defendant was the agent, employee, partner, co-conspirator, or other authorized representative of the other, and in committing the acts and omissions alleged hereinafter, were acting within the scope of their agency, employment, partnership, conspiracy, or other authorized representation.  Whenever and wherever reference is made in this Complaint to any acts of Defendants, such allegations and reference shall also be deemed to mean the acts of each Defendant acting individually, jointly or severally.

## IV.    FACTUAL ALLEGATIONS
### A. Introduction

19.  Defendants, acting individually or in concert, directly or through agents, have engaged in a pattern or practice of discrimination against families with children in the operation of their residential rental properties, including the Subject Properties. Defendants continue to engage in such a pattern or practice of discrimination so as to constitute a continuing violation.

20.  Defendants' unlawful conduct includes, but is not limited to, commission of the following discriminatory housing practices:

      a.  Otherwise making accommodations unavailable to individuals with children;

      b.  Denying persons equal accommodations, and terms and conditions of tenancy because of familial status;

1        c. Making written and oral statements of preference, limitation, or

2           discrimination with respect to the rental and use and enjoyment of housing

3           accommodations;

4        d. Inquiring about the familial status of persons seeking to rent housing

5           accommodations; and

6        e. Depriving persons of the statutory right to truthful information about the

7           availability of housing because of familial status.

8    21. In the alternative, Defendants have negligently failed to hire, train, supervise and

9 discipline their agents and employees, and themselves, in order to conform the operation

10 of the Subject Properties to the standard of care for the industry.

11          **B.    The Tenancy of Plaintiff Ana Beltran**

12    22. On January 1, 2004, Ana Beltran, ("Ana") her husband, Ramon, and her one-

13 year-old son moved into a one-bedroom apartment, unit number 4, at 4140 Grand View

14 Boulevard. In 2006, Ana gave birth to another son, and in 2009, Ana gave birth to a

15 daughter. Ana's children are now 1, 3 and 7 years of age.

16    23. On or around the year 2008, a new onsite-manager for the Grand View Property

17 was hired, Defendant Enrique Otaroma. Up to the point of Otaroma's hiring, the tenancy

18 of Ana's family was uneventful, having never received any notices of lease violations.

19    24. After Otaroma became the onsite-property manager, Defendants provided Ana

20 with several handouts. The first handout was on Raford Management letterhead and

21 entitled "RULES AND REGULATIONS" ("Rules") (attached hereto as Exhibit A). The

22 relevant Rules at issue in this Complaint are:

24      "8. Children are not to play on the stairs, hallways, porches, walkways and driveways, nor are they to be left unsupervised at any time.

25      9. Any damage caused by a minor must be paid for by the responsible adult....

26      20. Children must stay off all plants and landscaping."

25. On February 18, 2010, Ana received a "3 Day Notice to Cure or Quit" from Defendants. The "violations" included "Having children playing on the parking lot." (Attached hereto as Exhibit B.)

26. An additional handout given to Ana by Defendants was dated May 22, 2010 entitled "Reminder to all Tenants" ("Reminder") (attached hereto as Exhibit C). The Reminder included the following language: "The use of this **property as a playground is not acceptable under any circumstance.** There are parks nearby for the enjoyment of the resident whose may need it, or want it." The Reminder went on to state, "Please take some time to read the Rules and Regulations of this building, all the residents have signed and/or received one by certified mail. If you need a copy just ask the Manager for a new one. **The Camera system is recording all the common areas 24/7.** Also keep in mind that the **company will reward (at the company's discretion) with $300.00** to the tenant whose **testimony helped to evict to whoever (repeatedly) doesn't want to comply."** (All sic, all emphasis in the original.) The Reminder ends with "Raford Management Company Inc."

27. On May 30, 2010, Defendants served a second "3 Day Notice to Cure or Quit" dated May 24, 2010 upon Ana (attached hereto as Exhibit D). The "violations" included "You have children playing in the hallways and in the parking lot." Defendants then attached photographs to the 3 Day Notice purporting to be photographs of Ana's children.

28. On May 30, 2010, Defendants served a third "3 Day Notice to Cure or Quit" dated May 30, 2010 upon Ana (attached hereto as Exhibit E). The "violations" included "Your children playing in the hallways. Your Children playing over the plants and landscaping." Defendants then attached photographs to the 3 Day Notices purporting to be photographs of Ana's children.

29. After receiving these notices, Ana approached Defendant Otaroma and told him it is illegal for him to require children to stay inside. Defendant Otaroma stated that he doesn't make the rules, Raford Management does, and if Ana had a problem with the

1  rules, that she should contact Raford Management.  Defendant Otaroma also told Ana,

2  "The property is not a park, and the children must go to the park if they want to play," or

3  words to that effect.  Defendant Otaroma also told Ana she only rented the "inside" of

4  her apartment, and not the outside.

5      30.  Ignoring Ana's warning of illegality, on June 10, 2010, Defendants served a

6  fourth "3 Day Notice to Cure or Quit" dated June 3, 2010 upon Ana (attached hereto as

7  Exhibit F).  The "violations" included "Playing in the hallways is prohibited.  Running

8  and playing over the plants and landscaping is prohibited."  The Defendants attached

9  photographs of the driveway of the Grand View Property, purporting to be photographs

10  of Ana's children.

11     31.  On June 10, 2010, Defendants served a fifth "3 Day Notice to Cure or Quit" dated

12  June 4, 2010 upon Ana (attached hereto as Exhibit G).  The "violations" included

13  "Playing in the hallways is prohibited.  Running and playing over the plants and

14  landscaping is prohibited."  The Defendants attached photographs of the Grand View

15  Property's outdoor area, purporting to be photographs of Ana's children.

16     32.  On June 10, 2010, Defendants served a sixth "3 Day Notice to Cure or Quit"

17  upon Ana dated June 10, 2010 attached hereto as Exhibit H).  The "violations" included

18  "Playing in the hallways and parking lot is prohibited.  Running and playing over the

19  plants and landscaping is prohibited."  The Defendants attached photographs of the

20  Grand View Property's outdoor area, purporting to be photographs of Ana's children.

21     33.  On June 17, 2010, Defendant Raford Management's attorney, Mark Langer, sent

22  a letter to Ana's husband  (attached hereto as Exhibit I).  This letter inaccurately alleged

23  that Ana's children were being disruptive, and inaccurately interpreted paragraph 10 of

24  Ana's lease agreement (attached hereto as Exhibit J) to read that "Your children may not

25  run or play in the building's walkways."

26     34.  Since February 2010, in fear of being evicted, Ana kept her children indoors and

27  did not allow them to play outside of the apartment.  The photographs taken by

28  Defendants depicting Ana's children were taken when Ana's children were taking out the

1  trash, walking to and from the unit, or being walked through the property while

2  accompanied by Ana herself.

3      35.  The onsite-property manager, Defendant Otaroma, has told Ana's oldest son that

4  that the Grand View Property "is not a play ground" and that if the son wanted to play

5  outside, he had to go to the park.

6      36.  The allegations put forward in connection with Ana Beltran's tenancy are

7  supported in the signed declaration of Ana Beltran, attached hereto as Exhibit K.

8      37.  On June 1, 2010, Ana contacted plaintiff Housing Rights Center ("HRC") to

9  lodge a complaint against the Defendants, alleging familial status discrimination.

10              **C.    The Tenancy of Plaintiff Antonio Beltran**

11      38.  In the year 2000, Plaintiff Antonio Beltran ("Antonio"), his wife, Esther, and

12  their son, moved into a one-bedroom apartment, unit number 7, at 4136 Grand View

13  Boulevard, Los Angeles, California.  Antonio is plaintiff Ana Beltran's father.  On

14  occasion, Antonio babysits Ana's children.

15      39.  Defendants also gave Antonio the above-mentioned "Rules and Regulations"

16  marked Exhibit A.

17      40.  Defendants also gave Antonio the above-mentioned "Reminder" marked Exhibit

18  C.

19      41.  On May 30, 2010, Defendants served upon Antonio a "3 Day Notice to Cure or

20  Quit" dated May 22, 2010 (attached hereto as Exhibit L).  The "violation" listed "You

21  have children playing in the hallways and in the parking lot."  The Defendants attached

22  photographs of the common area purporting to be Antonio's grandchildren.

23      42.   On May 30, 2010, Defendants served upon Antonio a second "3 Day Notice to

24  Cure or Quit" dated May 24, 2010 (attached hereto as Exhibit M).  The "violation" listed

25  "You have children playing in the hallways and in the parking lot."

26      43.  On June 10, 2010, Defendants served upon Antonio a third "3 Day Notice to

27  Cure or Quit" dated June 3, 2010 (attached hereto as Exhibit N).  The "violations" listed

28  "Playing in the hallways is prohibited.  Running and playing over the plants and

landscaping is prohibited." Defendants attached photographs of the driveway purporting to be Antonio's grandchildren.

44. On June 11, 2010, Defendants served upon Antonio a fourth "3 Day Notice to Cure or Quit" dated June 11, 2010 (attached hereto as Exhibit O). The "violations" listed "Playing in the hallways is prohibited. Running and playing over the plants and landscaping is prohibited." Defendants attached photographs of the common area purporting to be Antonio's grandchildren.

45. Since May, 2010, Antonio, in fear of being evicted, has not allowed his grandchildren to play outside on the Grand View Property. Antonio keeps the grandchildren inside the apartment, or accompanies them at all times when walking them through the Grand View Property.

46. The allegations put forward in connection with Antonio Beltran's tenancy are supported in the signed declaration of Antonio Beltran, attached hereto as Exhibit P.

### D. The Tenancy of Stephany Gilmore

47. In March of 2009, plaintiff Stephany Gilmore ("Ms. Gilmore") moved into unit 6 of 4136 Grand View Boulevard with her daughter and her then two-year-old grandson.

48. Defendants also gave Ms. Gilmore the above-mentioned "Rules and Regulations" marked Exhibit A.

49. Defendants also gave Ms. Gilmore the above-mentioned "Reminder" marked Exhibit C.

50. Ms. Gilmore now takes care of her grandson on a regular basis, and her grandson lives with Ms. Gilmore several times per week.

51. On or around June 2010, Defendant Otaroma, without warning or notice, took Ms. Gilmore's grandson's tricycle, which was sitting on Ms. Gilmore's porch. Ms. Gilmore, believing the tricycle to have been stolen asked Defendant Otaroma if she could see the security camera footage, so she could identify the thief. Only then did Defendant Otaroma tell Ms. Gilmore that he had "confiscated" the tricycle, because Ms. Gilmore's grandson "was not allowed to ride the tricycle on the property" or words to that effect.

52. Since June 2010, Ms. Gilmore, in fear of being evicted or harassed, has kept her grandson indoors and prohibited him from playing outside on the Grand View Property.

### The Housing Rights Center's Investigation

53. On or around June 1, 2010, Ana contacted HRC regarding the Rules, Reminder and threats of eviction she received from Defendants. HRC then initiated an investigation into the Grand View Property, which included a tenant survey of the Grand View Property, the results of which sustained the allegations of familial status discrimination.   In reaction to the ongoing discrimination at the Grand View Property, HRC conducted a property search of Defendants and found that Defendants owned and/or managed several other properties in Los Angeles County, including but not limited to the Palms Property and Culver Property. HRC then expanded the scope of its investigation of Defendants' actions in order to determine whether or not Defendants engaged in systemic discrimination based on familial status. Through the use of vacancy checks, telephone tests and on-site tests of the Culver Property and Palms Property, HRC confirmed that Defendants engage in a pattern and/or practice of discriminating against families with children.

*Survey of Grand View Property*

54. On June 26, 2010 and on August 13, 2010, HRC conducted surveys of the Grand View Property and made contact with nine tenants.  Seven of these tenants are aware that Defendants prohibit children from playing outside.  One tenant stated she received a "3 Day Notice to Cure or Quit" after a friend of hers brought her children over, and the children were playing quietly outside.  This tenant stated she asked Defendant Otaroma "Kids can't play outside?"  Otaroma responded "Complex's rules. Kids cannot be out here," or words to that effect.  A second tenant stated that every unit who has kids has problems with the onsite manager because he will not let children play outside.  This tenant stated there were places for children to safely play on the Grand View Property.  A third tenant stated, in the attached declaration marked as Exhibit Q, that the onsite-property manager, Defendant Otaroma came outside with a camera hanging around his

1  neck, and started to take a picture of the tenant's 4-year-old niece. This tenant told

2  Otaroma that if he took the picture, he would call the police. Defendant Otaroma stated

3  he was taking the picture to "have proof" that kids were playing outside, or words to that

4  effect. A fourth tenant stated that Otaroma is "more strict now" and that children are no

5  longer allowed to play outside. A fifth tenant stated that Otaroma will not let kids play

6  outside even though there are safe places for children to play outside.

7  *Vacancy Checks*

8       55. Prior to conducting on-site tests or telephone tests, HRC conducts vacancy checks

9  to confirm the existence of a vacancy. HRC conducted two vacancy checks at the Palms

10  Property and one vacancy check at the Culver Property.

11  *Testing*

12       56. HRC routinely employs "testers," trained volunteers who play the role of a person

13  who is looking for a housing unit in which to reside. Testers are given no information

14  about any allegations against property owners. Instead, the testers are instructed to either

15  call or visit a property to view an available dwelling. The testers receive explicit

16  instructions on what information to provide and questions to ask the housing provider.

17  Testers then provide summaries of their interactions with the housing providers to an

18  HRC Case Analyst. The Case Analyst then reviews the summaries to determine if the

19  tests sustain accusations of discrimination.

20       57. HRC conducted a telephone test for familial status discrimination at the Culver

21  Property on August 16, 2010. This test consisted of paired testers: a "protected" tester

22  who stated that she had a child under the age of 18, and a "control" tester who stated she

23  was a member of an adult-only household.

24       58. Both testers spoke with "Sebastian," who upon information and belief is an

25  employee and agent of Raford Management, and Culver Apts. The protected tester

26  ("Tester A") told Sebastian that she had a 5-year-old daughter. The control tester

27  ("Tester B") told Sebastian that she would be moving in with a 30-year-old sister.

28

1  59. Sebastian told Tester B, with the adult sister, about a "move in special" that

2  discounted the $1,295 security deposit down to only $500 upon approved credit. Tester

3  A, with the 5-year-old, was not told about this discount.

4  60. On August 19, 2010, an onsite test was conducted at the Palms Property. Two

5  testers (hereinafter "Tester C" and "Tester D") met with Regina, who identified herself as

6  the manager. Upon information and belief, Regina is an employee and agent of Raford

7  Management and Palms Apts.

8  61. Regina asked if Tester D was the one who called "who had the son" or words to

9  that effect. Tester D told Regina that she had not called, but does have a 6-year-old

10  daughter. Regina then told Tester D that the Palms Property has a "zero noise tolerance,"

11  that there was only one family with children living at the property and that those children

12  are quiet. Regina stated that the Palms Property was inhabited by a lot of people who

13  work nights, single people and students, and that these people all abide by the zero noise

14  policy. Regina went on to state that she has her own grandchildren over some times, and

15  she doesn't let them play outside, takes them straight inside when they come over, and

16  then shuts all the windows because of the zero noise policy.

17  

**V.  INJURY**

18  62. As a result of the Defendants' above-described actions, Plaintiffs Ana Beltran,

19  Antonio Beltran and Stephany Gilmore, their children and grandchildren have suffered,

20  are continuing to suffer, and will in the future suffer, irreparable loss and injury,

21  including, but not limited to, loss of their past and current housing, deprivation of their

22  full use and enjoyment of their past and current tenancies, violation of the covenant of

23  quiet enjoyment, invasion of the private right of occupancy, violation of their civil

24  rights, and bodily injury including emotional distress, humiliation, embarrassment, and

25  other special and general damages according to proof.

26  63. Defendants' discriminatory actions required Plaintiff HRC to divert its scarce

27  resources from its other fair housing activities, and frustrates HRC's mission to eliminate

28  housing discrimination and actively promote fair housing in Los Angeles County.

COMPLAINT

- 15 -

1  Defendants' discriminatory actions also deprived Plaintiff HRC, its agents and
2  employees of the statutory right to truthful information about the availability of housing
3  because of familial status. Accordingly, Plaintiff HRC is an "aggrieved party" within the
4  meaning of 42 U.S.C. § 3602(i) and California Gov't Code § 12927(g), and seeks
5  monetary, declaratory, and injunctive relief for housing discrimination by and through
6  this action.

7  64. The unlawful practices of the Defendants as described above were and are
8  wanton, willful, malicious, fraudulent, and/or oppressive; were intended to cause injury;
9  and/or were done in conscious, callous, reckless, or deliberate disregard for the
10 federally protected rights of Plaintiffs. Accordingly, Plaintiffs are entitled to punitive
11 damages.

12 65. An actual case or controversy exists between the parties regarding Defendants'
13 duties under federal and state fair housing laws. Accordingly, Plaintiffs are entitled to
14 declaratory relief.

15 66. Unless enjoined, Defendants will continue to engage in the unlawful acts and
16 the pattern or practice of discrimination described above. Plaintiffs have no adequate
17 remedy at law. Accordingly, Plaintiffs are entitled to injunctive relief.

## IV.   CLAIMS FOR RELIEF

### First Claim - Fair Housing Act

#### (By All Plaintiffs Against All Defendants)

22 67. Plaintiffs incorporate by reference each and every allegation contained in
23 paragraphs 1 through 66 above.

24 68. Defendants, by and through a pattern or practice of purposeful discrimination on
25 the basis of familial status, have violated the federal Fair Housing Act, 42 U.S.C. §§
26 3601, et seq., ("FHA") in that Defendants have injured Plaintiffs by engaging in the
27 following discriminatory housing practices:

28

a.   Otherwise making accommodations unavailable to individuals with children in violation of 42 U.S.C. §3604(a);

b.   Denying persons equal accommodations, and terms and conditions of tenancy because of familial status in violation of 42 U.S.C. § 3604(b);

c.   Making written and oral statements of preference, limitation, or discrimination with respect to the rental and use and enjoyment of housing accommodations in violation of 42 U.S.C. § 3604 (c) and

d.   Making false representations because of a person's familial status about the availability of dwellings in violation of 42 U.S.C. §3604(d).

69.   As a direct and proximate result of the acts and omissions herein alleged, Plaintiffs have suffered, and continue to suffer injury.

70.   Defendants' conduct constitutes an ongoing and continuous violation of the FHA. Unless enjoined, said conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

71.   Pursuant to 42 U.S.C. §3613(c)(1) and (2) Defendants are liable to Plaintiffs for compensatory damages, punitive damages, injunctive relief, and attorneys fees and costs.

**Second Claim – California Fair Employment and Housing Act**
**(By All Plaintiffs Against All Defendants)**

72.   Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 71 above.

73.   Defendants, by and through a pattern or practice of discrimination on the basis of familial status, violated the California Fair Employment and Housing Act, Cal. Gov't Code §12955 et seq., ("FEHA"), by engaging in the following discriminatory housing practices:

a.   Discriminating against or harassing persons because of familial status in violation of Cal. Gov't Code § 12955(a);

b.   Making, or causing to be made, oral inquiries concerning the familial status of persons seeking to rent or lease housing accommodations, in violation of Cal. Gov't Code § 12955(b);

c.   Making, printing and publishing statements with respect to the rental of a housing accommodation that indicates preference, limitation, or discrimination based on familial status, or an intention to make that preference, limitation, or discrimination, in violation of Cal. Gov't Code § 12955(c);

d.   Discriminating against persons on the basis of familial status in violation of Section 51 of the Civ. Code, as that section applies to housing accommodations, in violation of Cal. Gov't Code § 12955(d);

e.   Aiding, abetting, inciting, compelling, or coercing the doing of any of the unlawful acts or practices prohibited by FEHA, or attempted to do so, in violation of Cal. Gov't Code § 12955(g);

f.   Otherwise making unavailable or denying a dwelling based on discrimination because of familial status, in violation of Cal. Gov't Code § 12955(k); and

g.   Implementing and enforcing a policy or practice that has a discriminatory effect on families with children in violation of Cal. Gov't Code § 12955.8.

74.   As a direct and proximate result of the aforementioned acts, Plaintiffs have suffered, and continue to suffer injury.

75.   Defendants' conduct constitutes an ongoing and continuous violation of the FEHA.  Unless enjoined, said conduct will continue to inflict injuries for which Plaintiffs have no adequate remedy at law.

76.   Pursuant to Cal. Gov't Code § 12989.2, Plaintiffs are entitled to injunctive relief, compensatory damages, punitive damages, attorneys' fees and costs.

### Third Claim-Unruh Civil Rights Act
**(By Plaintiffs Ana Beltran, Antonio Beltran, Stephany Gilmore against Defendants S.M.H. Grandview, LLC; Zeng, LLC; George McHose; Avi Shlanger; Raford Management Co., Inc.; Rafael Figueroa and Enrique Otaroma)**

77.  Plaintiffs hereby reallege and incorporate paragraphs 1 through 76 as if fully set forth herein.

78.  Defendants  S.M.H.  Grandview,  LLC;  Zeng,  LLC;  George  McHose;  Avi Shlanger; Raford Management Co., Inc.; Rafael Figueroa and Enrique Otaroma injured Plaintiffs Ana Beltran, Antonio Beltran and Stephany Gilmore ("Plaintiff Tenants") in violation of the Unruh Civil Rights Act, Cal. Civ. Code §51 et seq. ("Unruh Act") by discriminating against them on the basis of their familial status.

79.  Pursuant to California Civil Code § 52.1(f), Defendants are liable to Plaintiff in an amount totaling no less than $4,000 for every violation of California Civil Code §51 et seq. or three times of actual damages, for injunctive relief and for attorneys' fees and costs incurred in this action.

### Fourth Claim - California Unfair Business Practices Act
**(By All Plaintiffs Against Defendants: S.M.H. Grandview, LLC; Zeng, LLC; George McHose; Avi Shlanger; Raford Management Co., Inc.; Rafael Figueroa; Palms Apts., LLC; Jeffrey D. Holmes and Culver Apts., LLC)**

80.  Plaintiffs re-allege and incorporate by reference paragraphs 1 through 79 of the Complaint herein.

81.  In acting as herein alleged, Defendants S.M.H. Grandview, LLC; Zeng, LLC; George McHose; Avi Shlanger; Raford Management Co., Inc.; Rafael Figueroa; Palms Apts., LLC; Jeffrey D. Holmes and Culver Apts., LLC have failed to comply with applicable laws including the FHA, the FEHA and the Unruh Act.  Accordingly, Defendants S.M.H. Grandview, LLC; Zeng, LLC; George McHose; Avi Shlanger;

Raford Management Co., Inc.; Rafael Figueroa; Palms Apts., LLC; Jeffrey D. Holmes and Culver Apts., LLC have engaged in acts of unfair and unlawful business acts or practices as proscribed by Cal. Bus. & Prof. Code §17200, et seq.  By bringing this action, Plaintiffs are acting in the interest of themselves and the general public, pursuant to Cal. Bus. & Prof. Code §17204.

82.  Plaintiffs and the general public, have suffered, and continue to suffer, irreparable harm due to the discriminatory policies and practices of Defendants S.M.H. Grandview, LLC; Zeng, LLC; George McHose; Avi Shlanger; Raford Management Co., Inc.; Rafael Figueroa; Palms Apts., LLC; Jeffrey D. Holmes and Culver Apts., LLC and these Defendants' continuing and conscious disregard of the fair housing rights of families with children.

83.  Pursuant to Cal. Bus. & Prof. Code §17203, Plaintiffs seek to enjoin Defendants S.M.H. Grandview, LLC; Zeng, LLC; George McHose; Avi Shlanger; Raford Management Co., Inc.; Rafael Figueroa; Palms Apts., LLC; Jeffrey D. Holmes and Culver Apts., LLC from their continuing commission of the acts alleged above, which if not enjoined will continue to irreparably harm Plaintiffs and the citizens of the State of California, harm for which there is no plain, speedy or adequate remedy at law.

## Fifth Claim – Negligence

**(By Plaintiffs Ana Beltran, Antonio Beltran and Stephany Gilmore Against Defendants S.M.H. Grandview, LLC; Zeng, LLC; George McHose; Avi Shlanger; Raford Management Co., Inc.; Rafael Figueroa and Enrique Otaroma)**
**(By Plaintiff HRC Against All Defendants)**

84.  Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 83 above, as though fully set forth herein.

85.  Defendants owed, and continue to owe Plaintiffs a duty to operate the Subject Properties in a manner that is free from unlawful discrimination and to employ, train, and supervise their directors, employees, managers, agents, and themselves to fulfill that

duty.  Defendants breached that duty by engaging in a pattern and practice of discrimination against families with children as herein alleged.

86.  Defendants' negligence includes but is not limited to:

     A.  Defendants' negligent failure to train and supervise themselves regarding compliance with the requirements of federal and state fair housing laws; and

     B.  Defendants' negligent failure to operate the Subject Properties in conformity with accepted industry custom and standards.

87.  As a result of Defendants' negligence, Plaintiff Tenants have been injured.

88.  As a result of Defendants' negligence, HRC was forced to divert its scarce resources, and experienced a frustration of its mission to eliminate discrimination in housing.

## VII.  PRAYER FOR RELIEF

Plaintiffs pray this Court enter judgment as follows:

1.  Declare that the discriminatory practices of the Defendants as set forth above, violate the Fair Housing Act, as amended, 42 U.S.C. § 3601, et seq., the California Fair Employment and Housing Act, Cal. Gov't Code § 12955, et seq., the Unruh Act, Cal. Civ. Code §51, et seq. and the California Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200, et seq.

2.  Enjoin Defendants, their agents, employees, successors, and all other persons in active concert or participation with any of the Defendants, from discriminating on the basis of familial status.

3.  For temporary, preliminary and permanent injunctive relief enjoining Defendants from discriminating against prospective renters and in-place tenants.

4.  Order all Defendants, as well as all employees and agents of Defendants, to engage in comprehensive fair housing training.

5.    Order Defendants to submit to monitoring of their practices and records in order to ensure compliance with the fair housing laws.

6.    Award compensatory damages to Plaintiffs.

7.    Award punitive damages to Plaintiffs.

8.    Award any other such damages as may be allowed under all the above federal and state laws.

9.    Award Plaintiffs their reasonable attorneys' fees and costs.

10.   Additional and further relief which the Court deems just and proper.

## VIII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury as to all issues.

Dated: September 10, 2010                    Respectfully Submitted,


_____
ANNETTE MORASCH
Attorney for Plaintiffs

EXHIBIT A

**Corporate Office:**

Raford Management Co., Inc.
5535 Balboa Blvd., Suite 201
Encino, CA 91316
**Tel: (818) 386-0400**
Fax: (818) 386-0404
E-Mail: Rafordinc@aol.com

**RAFORD**

# RULES AND REGULATIONS

*Property Management*

1. The purpose of these regulations is to describe behavior that is acceptable and unacceptable in living together in these apartments. Everyone needs to cooperate to make the standard of living better for everyone. Further, it is understood that tenants share in the responsibility in making the living conditions better for all involved.

2. All requests from tenants must be reported to the resident manager IN WRITING. Tenant will be responsible for all repairs caused by tenant, such things as broken windows, damaged screens, torn or damaged carpets, plumbing stoppages, etc.

3. Only persons who are on the lease are allowed to occupy the unit. Any persons living in the apartment who are not a party to the lease and approved on the lease must qualify and will be charged additional rent of 10%. There will be a 10% charge for each additional occupant – other than the one who is on the lease agreement.

4. It is the tenant's responsibility to pay for any repairs required because of negligent or improper conduct by the tenant or the tenant's guest(s). For example, windows or screens broken by the tenant are to be repaired at the tenant's expense. In addition, the cost of plumbing replacements or repairs resulting from improper usage of appliances, pipes or fixtures by the tenant are also payable by the tenant. Tenant is responsible for all plumbing stoppages caused by tenant.

5. The units are equipped with smoke detectors. It is the tenant's responsibility to check them it frequently to be sure it is operating. See the manager if you do not know how to do this.

6. No loud music is allowed at any time. **All music must be discontinued at 10 pm.** Tenants who disturb other apartment dwellers will subject to eviction.

7. Parties and Piñatas are not allowed around the premises without prior **written** consent of management. Every tenant is responsible for the conduct of this or his/her guest(s). Please be sure your guest(s) know and observe these rules.

8. Children are not to play on the stairs, hallways, porches, walkways and driveways, nor are they to be left unsupervised at any time.

9. Any damage caused by a minor must be paid for by the responsible adult.

10. All baby carriages, tricycles, wagons, bicycles, barbeques and toys must be kept inside the apartments when not in use. No storage of any kind in outside common areas.

11. Hanging pictures and other objects is prohibited. No holes of any kind without written permission. Tenants will be responsible for all related repair costs.

12. No antennas may be installed by any tenant on the roof or exterior or interior of the apartment building without the express **written permission** of the management.

13. No painting, wallpapering, redecorating, alterations, etc., is permitted without **written permission** of the management. Tenant will be responsible for any costs to repair.

14. No heavy furniture such as piano, organ, water furniture or item of unusual weight or dimension is allowed without the prior **written permission** of the Manager/Management Co.

15. All potted plants, large and small, must be equipped with a saucer or other waterproof base to prevent water damage to underlying carpets or surface. No potted plants without **written permission**.

16. We ask you to pick up promptly all mail, newspaper, etc. that is delivered to you.

17. Car Washing is strictly prohibited.  The use of the property's water to wash your vehicle **or any use of exterior water** or is also prohibited.

18. Nothing is to be affixed to the windows of your apartment, including signs, decals, posters, aluminum foil, etc. Tenants will be charged for the cost to remove and repair such damage.

19. Hanging clothes around the premises is prohibited.

20. Children must stay off all plants and landscaping.

21. No WADING POOLS of any shape or size are permitted ANYWHERE on the premises.

22. Laundry room is your convenience, please help keep it clean. No one, other than tenants whom reside on the premises, is allowed to use the laundry facility.


Agreed:


_____          _____
Tenant's Name                                                    Date


_____
Signature

# EXHIBIT B

# RAFORD MANAGEMENT CO INC.

# 3 Day Notice to Cure or Quit

Los Angeles, February 18, 2010

**Ramon Castellanos & occupants**
**4140 Grand View Blvd Apt 4**
**Los Angeles,  CA  90066**

We are letting you know you have 3 days to cure or quit the premises. Per Rules and Regulations of the Grand View Apartments:

**Violation:**     **Having toys and other objects in front of your door.**

**Objects hanging in front of your door.**

**Having children playing on the parking lot.**

Per previous tenant phone call complaints, and the manager witness, we have to inform you, you have 3 days to cure the community violations or quit the premises. Be advised that a failure to comply may result on **Eviction proceedings. If you have further questions please call the office.**

Raford Management Company Inc.

818-386-0482

**C/Copy to Tenant File.**

EXHIBIT C

# RAFORD MANAGEMENT CO INC.

# Reminder to all Tenants

Los Angeles, May 22, 2010

**Dear Tenant:**
**For Building 4140 Grand View Blvd**

Per numerous phone calls and complaints to the Resident Manager and to the company office, Raford Management Company wants to remind to all tenants that in order to make our community enjoyable to all its residents, we must remind that:

- The use of this **property as a playground is not acceptable under any circumstance**. There are parks nearby for the enjoyment of the residents whose may need it, or want it. The company has received **multiple complaints** (very specific) about some residents having the parking lot and the hall ways used as a bike ground or a ball playground. The loud noise bothers some of our Residents who complaint.
- The use of the common areas as a private storage, personal patio, living room etc. **is strictly prohibited**. To have gatherings/meetings and drink alcoholic beverages in the common areas is not permitted at all. **Under CALIFORNIA law, anyone can be arrested for that reason.**
- The use of **shopping carts inside the property is not permitted at all**. They are loud, they bother other residents who complaint. Some had left them in front of the building; that reflects a total disregard and lack of respect of all our neighbors.
- Pet owners must walk their pets with a leash and pick up their droppings at all times.
- Residents Guest must park in the street or use the same Resident parking space **ALWAYS**. If anyone finds another car parked in your respective space, please let the manager know INMEDIATELY, so **the manager will have that car towed away within 1 hour of the complaint.**

Please take some time to read the Rules and Regulations of this building, all the residents have signed and/or received one by certified mail. If you need a copy just ask the Manager for a new one. **The Camera system is recording all the common areas 24/7**. Also keep in mind that the **company will reward (at the company's discretion) with $300.00** to the tenant whose **testimony helped to evict to whoever (repeatedly) doesn't want to comply.**

If you have further questions please ask the Resident Manager or call the office.

Thank You for your cooperation and understanding.

Raford Management Company Inc.
818-386-0482                                             C.Copy to Tenant's File

# EXHIBIT D

# RAFORD MANAGEMENT CO INC.

# 3 Day Notice to Cure or Quit

Los Angeles, May 24, 2010

**Ramon Castellanos & Occupants**
**4140 Grand View Blvd Apt 4**
**Los Angeles, CA 90066**

Dear Tenant :

We are letting you know you have 3 days to cure or quit the premises. Per Rules and Regulations of the Grand View Apartments:

**Violation:**    **You have children playing in the hallways and in the parking lot.**

Per tenant phone call complains, and the manager witness, we have to inform you, you have 3 days to cure the community violations or quit the premises. Be advised that a failure to comply may result on a **60 Day Notice to move out and/or Eviction proceedings. If you have further questions please call the office.**

*DELIVERED / POSTED*
*BY MANAGER E.O.*
*5-30-10  7:58 PM*

Raford Management Company Inc.

818-386-0482

**C/Copy to Tenant File.**











# EXHIBIT E

# RAFORD MANAGEMENT CO INC.

# 3 Day Notice to Cure or Quit

Los Angeles, May 30, 2010

**Ramon Castellanos & Occupants**
**4140 Grand View Blvd Apt 4**
**Los Angeles, CA 90066**

Dear Tenant :

        We are letting you know you have 3 days to cure or quit the premises. Per Rules and Regulations of the Grand View Apartments:

**Violation:**    **Your children playing in the hallways.**

             **Your Children playing over the plants and landscaping**

      Per the manager witness, we have to inform you, you have 3 days to cure the community violations or quit the premises. Be advised that a failure to comply may result on a **60 Day Notice to move out and/or Eviction proceedings. If you have further questions please call the office.**

Raford Management Company Inc.

818-386-0482

**C/Copy to Tenant File.**




EXHIBIT F

# RAFORD MANAGEMENT CO INC.

# 3 Day Notice to Cure or Quit

Los Angeles, June 3, 2010

**Ramon Castellanos & Occupants**
**4140 Grand View Blvd Apt 4**
**Los Angeles, CA 90066**

Dear Tenant :

                    We are letting you know you have 3 days to cure or quit the premises. Per Rules and Regulations of the Grand View Apartments:

**Violation:**     **Playing in the hallways is prohibited.**

                    **Running and playing over the plants and landscaping is prohibited**

        Per the manager witness, we have to inform you, you have 3 days to cure the community violations or quit the premises. Be advised that a failure to comply may result on a **60 Day Notice to move out and/or Eviction proceedings. If you have further questions please call the office.**

Raford Management Company Inc.

818-386-0482

*DELIVERED DY*
*MANAGER E.O.*
*6-10-10  7:44 PM*

**C/Copy to Tenant File.**











EXHIBIT G

# RAFORD MANAGEMENT CO INC.

# 3 Day Notice to Cure or Quit

Los Angeles, June 4, 2010

**Ramon Castellanos & Occupants**
**4140 Grand View Blvd Apt 4**
**Los Angeles, CA 90066**

Dear Tenant :

We are letting you know you have 3 days to cure or quit the premises. Per Rules and Regulations of the Grand View Apartments:

**Violation:**     **Playing in the hallways is prohibited.**

**Running and playing over the plants and landscaping is prohibited**

Per the manager witness, we have to inform you, you have 3 days to cure the community violations or quit the premises. Be advised that a failure to comply may result on a **60 Day Notice to move out and/or Eviction proceedings. If you have further questions please call the office.**

Raford Management Company Inc.

818-386-0482

**C/Copy to Tenant File.**



